**Robert Anthony REED, III, et al., Plaintiffs,**

v.

**James A. RHODES, et al., Defendants.**

No. 1:73cv1300.

United States District Court, N.D. Ohio.

March 18, 1994.

Thomas I. Atkins, Brooklyn, NY, James L. Hardiman, Cleveland, OH, David W. Whitaker, Beachwood, OH, for plaintiffs.

Frederick R. Nance, Dennis R. Terez, Squire Sanders & Dempsey, Wanda Rembert Arnold, Cleveland Bd. of Educ., Law Dept., Ricardo B. Teamor, Adrian D. Thompson, Teamor, Agyeman & Thompson, Cleveland, OH, Maree Sneed, Hogan & Hartson, Washington, DC, for local defendants.

Stephen M. O'Bryan, Margaret Anne Cannon, Kelley, McCann & Livingstone, Mark O'Neill, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for State defendants.

Daniel McMullen, Cleveland, OH, for Office of School Monitoring & Community Relations (OSMCR).

Mark B. Cohn, Jeffrey A. Huth, McCarthy, Lebit, Sam A. Zingale, Granville H. Bradley, Jr., Forbes, Forbes & Associates, Cleveland, OH, for intervenors.

### ORDER

BATTISTI, District Judge.

In 1976, after a lengthy trial, this Court found that the State Defendants and Cleveland Defendants had violated their federal constitutional obligations to the members of the Plaintiff class. Accordingly, the Court has entered Orders requiring Defendants to implement appropriate remedial measures.

On March 15, 1994, the Plaintiffs and Defendants submitted a joint motion, seeking, in part, the Court's tentative approval of a Settlement Agreement which would modify the parties' remaining obligations under the remedial orders and define a course to the orderly and just resolution of this litigation. Without in any way indicating whether the Court will ultimately approve the Settlement Agreement and enter it as a Consent Decree, the Court finds it appropriate to grant such tentative approval.

---

The Cleveland Defendants shall publish on at least two separate occasions the attached class notice in the Cleveland Call & Post and the Cleveland Plain Dealer, such publication to begin no later than the week of March 21, 1994 and to be completed no later than March 31, 1994.

Further, the parties are instructed to place a copy of the Settlement Agreement in every Cleveland public school and to assist the Director of the Office on School Monitoring and Community Relations in coordinating receipt of the statements anticipated in the class notice.

The parties shall appear at a hearing to be held at 10:00 a.m. on April 13, 1994, and any additional days that might be necessary, for the purpose of presenting such testimonial and/or documentary evidence as they believe necessary and appropriate to persuade the Court to approve the Settlement Agreement and enter it, in the form of a Consent Decree, as an order of this Court. At this hearing, the Court will also consider comments from interested organizations and individuals, including unnamed members of the Plaintiff class.

IT IS SO ORDERED.

ATTACHMENT

### *LEGAL NOTICE*

IN THE UNITED STATES
DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CASE NO: C73–1300

ROBERT ANTHONY REED,
et al., Plaintiffs,

vs

JAMES A. RHODES, et al., Defendants.

NOTICE OF THE PROPOSED SETTLEMENT OF THE CLEVELAND SCHOOL DESEGREGATION CASE AND OF THE HEARING OF THAT SETTLEMENT IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

To: ALL AFRICAN–AMERICAN STUDENTS ATTENDING SCHOOLS IN THE PUBLIC SCHOOL SYSTEM OF THE CITY OF CLEVELAND AND THE PARENTS OR LEGAL GUARDIANS OF SUCH STUDENTS

PURSUANT TO RULE 23(E) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND THE ORDER OF THIS COURT, YOU ARE HEREBY NOTIFIED THAT:

The Plaintiffs, representatives of a certified Class; the Ohio State Board of Education, its members, and the Superintendent of Public Instruction of the State of Ohio ("State Defendants"); and the Board of Education of the City School District of the City of Cleveland, its Members, and the Superintendent of the Cleveland Public Schools ("Cleveland Defendants"); have reached a Settlement Agreement in the above referenced case which resolves all issues in this action between the parties relating to the adjudicated acts and practices of discrimination by the Cleveland and State Defendants.

On March 18, 1994, the Court tentatively approved the Settlement Agreement, pending a Fairness Hearing and a determination that the agreement is fair, adequate and reasonable, before final approval of the Settlement Agreement and the entry of same as a Consent Decree in this case.

You are encouraged to examine the Settlement Agreement, as it may affect you directly. The text of the Settlement Agreement is printed below. Further, copies of the Settlement Agreement will be available for your inspection between the hours of 9:00 a.m. and 5:00 p.m., Monday through Friday, in the offices of the Office on School Monitoring & Community Relations ("OSMCR"), 511 Terminal Tower, Cleveland, Ohio 44113. You may also inspect the pleadings and papers filed with the Court in this action at the office of the Clerk of Court. Further, copies of the Settlement Agreement shall be available for your inspection during regularly scheduled school hours at the Administrative Office of each school operated by the Cleveland School District.

The Settlement Agreement will not be approved by the Court and entered as a Consent Decree until the Court has held a hearing to determine the fairness and adequacy of the settlement and considered all oral and written statements.

### HEARING

The Court will consider the fairness and adequacy of the Settlement Agreement at a hearing commencing on April 13, 1994, at 10:00 a.m. at the United States District Court in courtroom 301, in the United States Courthouse located at 201 Superior Avenue, Cleveland, Ohio. At the hearing, you or your counsel may be permitted to make an oral presentation supporting or objecting to the Settlement Agreement as a fair, adequate and reasonable disposition of the claims involved in this litigation. Each person who wishes to make an oral presentation must submit a written statement according to the procedures described below. Complying with these procedures will not necessarily entitle one to make an oral presentation at the hearing. However, any person who does not submit a written statement in compliance with these procedures will not be permitted to make an oral presentation at the hearing. Oral presentations shall be limited to a maximum of five minutes. Under special circumstances and depending on time constraints, the Court may vary this time limitation.

All written statements must be submitted to OSMCR, 511 Terminal Tower, Cleveland, Ohio 44113.

You must submit your statement in person or by mail, and the statement must be received by OSMCR no later than the date and time specified below. The statement must 1) include your name, address and telephone number; 2) indicate whether you are a member of the Plaintiff Class (that is, whether you are an African–American student attending a Cleveland Public School or a parent or legal guardian of such a student); 3) identify any other person or group you seek to represent; 4) indicate if you or your counsel wish to speak at the hearing; and 5) describe your support for or objection to the Settlement Agreement (as you intend to state it if per-mitted to speak at the hearing). Additionally, copies of any documents to which you intend to refer, other than the Settlement Agreement, must be attached. The first page of the statement must include the name of the case, *Robert Anthony Reed, et al. vs. James A. Rhodes, et al.,* and its docket number: C73–1300. You must provide four copies of your statement, with any attachments, to OSMCR so that it may forward copies to counsel of record.

All written statements submitted according to procedures described above will be considered by the Court, whether or not you make an oral presentation.

### DO NOT WRITE OR CALL JUDGE BATTISTI DIRECTLY.

### PROPONENTS OF THE SETTLEMENT AGREEMENT

If you are satisfied that the Settlement Agreement is fair, adequate and reasonable, you need not take any action. Of course, you or your counsel may submit a written statement, as specified above, in support of the Settlement Agreement, whether or not you make an oral presentation. If you want the Court to consider your support of the Settlement Agreement, you must submit your written statement to OSMCR before 5:00 p.m. Monday, April 4, 1994.

### OPPONENTS OF THE SETTLEMENT AGREEMENT

If you are not satisfied that the Settlement Agreement is fair, adequate and reasonable, and want the Court to consider your objections, you must submit a written statement, as specified above, to OSMCR before 5:00 p.m. Monday, April 4, 1994.

### HISTORY OF THE ACTION

This case began with the 1973 filing of the complaint by Plaintiffs, parents representing a number of students then enrolled in the public schools of the City of Cleveland, and others similarly situated, alleging that the Cleveland Board of Education, its members and Superintendent, along with the Governor of Ohio, the Attorney General of Ohio, the Ohio Board of Education, its members and

the Ohio Superintendent of Public Schools, had engaged in intentional acts of discrimination and segregation, based on race, in the construction, management and operation of the public schools in Cleveland, including with respect to student assignment, staff hiring and assignment, testing, discipline, facility utilization, and allocation of resources.

After a lengthy trial, United States District Judge Frank J. Battisti entered a 1976 opinion which found the Plaintiffs had successfully established that the Cleveland and State Defendants had engaged in conduct which violated the Constitution of the United States. Judge Battisti ordered the Defendants to develop and implement an extensive plan to remedy the constitutional violations, including desegregative assignment of students, administrators, faculty and staff; desegregative siting, construction, and use of facilities; desegregative development and use of academic programs, testing, discipline and allocation of resources; and increased involvement in the schools by parents and other community persons, as well as universities, civic organizations, and local businesses. The federal court ordered the Cleveland and State Defendants to share the financial costs of implementing the remedy.

In 1992, Judge Battisti ordered the parties to engage in discussions capable of leading to a fair, orderly and just resolution of this case. In 1993, the Local Defendants developed an extensive package of educational programs and services called Vision 21, designed to be phased in over a period of seven years. With the assistance of the Judge, the parties agreed in 1993 to certain programs and funding for the first year of Vision 21, and began discussions ordered by the Court to seek a comprehensive resolution to the remaining remedial issues in the case. On February 24, 1994, the parties submitted a *Memorandum of Points of Agreement,* outlining what they believed was the basis for the comprehensive resolution sought by the Court. On March 15, 1994, the parties filed the attached Settlement Agreement and requested that the

Court adopt it as a Consent Decree. Judge Battisti gave tentative approval to the Settlement Agreement and ordered the parties to prepare and publish this Notice to the Class in the *Call and Post* and at least one newspaper of general circulation. The parties were also ordered to appear at a Fairness Hearing to be held on April 13, 1994, to demonstrate why the Settlement Agreement and proposed Consent Decree would fairly and adequately protect the interests of the class.

### THE SETTLEMENT AGREEMENT AND PROPOSED CONSENT DECREE

The Settlement Agreement and proposed Consent Decree, as set forth below, are designed to resolve all issues and controversies between the parties relating to the constitutional violations earlier found by the Court, as well as all vestiges and effects of those violations. The Settlement Agreement and proposed Consent Decree fully record the rights of the Plaintiffs and the obligations of the Cleveland and State Defendants from now through July 1, 2000, and contain a request that the Court hold a hearing after July 1, 1997 to determine whether all remedial obligations have been met and, if so, to terminate its jurisdiction in this case and relieve the Defendants of any and all further obligations to the Plaintiffs except as set forth in the Settlement Agreement.

Upon approval of the Settlement Agreement and its entry by the Court as a Consent Decree, the Consent Decree would contain the totality of the obligations to the Plaintiffs by the Cleveland and State Defendants, and all parties would be bound by the terms of the Consent Decree as approved by the Court.

The text of the Settlement Agreement and proposed Consent Decree is as follows:

### SETTLEMENT AGREEMENT

### SECTION 1—THE PARTIES

The Parties to this Agreement are all of the parties in the Cleveland school desegregation case, *Reed v. Rhodes,* Case No. C73–1300 in the United States District Court for the Northern District of Ohio, Eastern Division. They are: The class of all African–American pupils in the Cleveland public schools and their parents, represented by the named representatives of the Plaintiff class

and their counsel ("Plaintiffs"); the Board of Education of the Cleveland City School District, its members and its Superintendent ("Local Defendants" or "the District"), and the Ohio State Board of Education, its members and the Superintendent of Public Instruction ("State Defendants").

## SECTION 2—EFFECTIVE DATE AND TERM

2.1. The effective date is the date on which the Court approves a Consent Decree incorporating the terms of this Agreement.

2.2. This Agreement, and all subsequent agreements intended to give full effect thereto, shall remain in effect until July 1, 2000, at which time they will terminate. The Defendants shall thereupon be released from all further obligation thereunder.

## SECTION 3—PURPOSE

The purpose of this Agreement is to bring *Reed v. Rhodes* to an orderly and just resolution, consistent with the remedial orders, by eliminating, to the extent practicable, those conditions that the Plaintiffs and the District believe are vestiges of past unlawful segregation in the District; to reconcile all outstanding differences between the Parties; to support the reformation of the educational processes in the Cleveland School District; to assure that education will continue in desegregated settings; to provide sufficient funding, consistent with local voters' support, for the educational initiatives known as Vision 21; to provide for monitoring of implementation, the identification of problems, and the resolution of potential disputes about compliance with either remedial orders or the provisions of this Agreement; and to authorize the State Superintendent of Public Instruction and the Court to assure compliance with the undertakings hereinafter defined.

## SECTION 4—VISION 21

4.1. The District designed Vision 21 as a seven-year educational improvement and desegregation plan to improve the educational achievement of children in the Cleveland School District. Those programs contemplated by Vision 21 which will receive State financial support are identified in summary form in Appendix B to this Agreement. The Cleveland Defendants shall implement them, except as otherwise provided in this Agreement or ordered by the Court. Appendix A contains a summary of the complete Vision 21 Program.

4.2. If the District elects not to implement Vision 21 as described in Appendix B, or it believes that for financial or other reasons it is unable to implement them, the Parties shall be consulted before the District commits to any change.

## SECTION 5—MAINTENANCE OF FACULTY AND PUPIL DESEGREGATION

5.1. Prior to the opening of school each fall, no school may have a student or faculty racial composition during the life of this Agreement which varies by more than $\pm 15$ percentage points from the districtwide averages for elementary, middle and high schools.

5.2. The sole exceptions to Section 5.1 are the variances existing during 1993–1994 and agreed to for the 1994–1995 and 1995–1996 school years, as provided in Section 6, and kindergarten classes and Lau sites, which shall be excluded from the calculations.

5.3. Defendants may employ such corrective measures as they deem appropriate to achieve the objectives of Section 5.1.

## SECTION 6—PERMISSIBLE VARIANCES IN STUDENT ASSIGNMENTS

6.1. During the 1994–1995 school year the following schools may exceed the $\pm 15$ percentage point parameters:

1. East Clark
2. Euclid Park
3. Iowa–Maple
4. Adlai Stevenson
5. Andrew J. Rickoff
6. John F. Kennedy
7. Wade Park
8. Louis Agassiz
9. Nathaniel Hawthorne
10. Riverside
11. Corlett.

6.2. During the 1995–1996 school year only the following schools may exceed the $\pm$ 15 percentage point parameters:

1. Adlai Stevenson
2. Andrew J. Rickoff

6.3. In the 1996–1997 school year and thereafter until July 1, 2000, all schools shall comply with the requirements of Section 5.1.

## SECTION 7—STATE FINANCIAL SUPPORT

7.1. Subject to the conditions defined in Section 8 of this Agreement, the State will provide a total of $295 million to support the desegregation-related and remedial order-related components of Vision 21 during the seven-year period from July 1, 1993 through July 1, 2000.

7.2. Of the foregoing $295 million, $275 million will match $275 million in local funding. The District may defer a portion of its 50/50 matching obligation in any given year, as agreed by all the Parties, provided that at the end of the term on July 1, 2000 the District will have met its matching obligation.

7.3. Twenty Million Dollars ($20 million) will not require a 50/50 match by the District.

7.4. The District may request payment of State dollars in varying amounts during each of the seven years, subject to a limit of $60 million in any one fiscal year.

7.5. A determination that the District lacks sufficient funds to support the programs in Appendix B shall not require additional State funding beyond the limits specified in the provisions of this Section 7. The State financial support agreed to in Section 7.1 constitutes the extent of the State's required financial contribution.

7.6. By May 1, 1994 the District will provide the State with a schedule of projected annual payment requests over the life of the Agreement.

7.7. The District will formulate and submit the amount of its initial request for State financial support for an upcoming biennial budget not later than November 1 of the preceding year. The State will review the request and either concur and initiate the process to gain necessary approval to implement the request, or initiate discussions with the District to reach agreement on an acceptable amount. Any financial disagreements unable to be resolved may be appealed to the Court pursuant to Section 16.3.

## SECTION 8—LOCAL FINANCIAL SUPPORT

8.1. The District will place a general operating levy before the voters in May 1994 and at least once a year thereafter until passage of the millage request(s) sufficient to cover the projected cost of the District's compliance with this Agreement; provided, however, that the Parties may agree not to submit a levy at a particular election if they are satisfied that it would be counterproductive. All Parties agree to support the District's efforts to pass the requisite millage(s).

8.2. The District will make every reasonable effort to maximize Medicaid reimbursement for Medicaid-eligible students.

8.3. By February 1, 1995 the District will adopt a strategic plan for facilities improvement. It shall include a multi-year facilities plan until July 1, 2000 and the institutionalization of a permanent improvement fund. A permanent improvement levy shall be placed before the voters in November 1995, unless otherwise agreed by the parties, and in future elections, as mutually agreed by the parties, until passage.

8.4. The District shall seek full advantage of capital dollars for facilities improvements which may be available to it under State law, including Revised Code Section 3313.372.

8.5. The District shall make significant redirection of Chapter One, reading and other dollars to Vision 21, to the extent consistent with applicable law. In any redirection of such funds, the District shall assure that the dollars are focused on the intended beneficiaries of the particular programs.

8.6. Not later than April 15, 1994, the Parties shall agree upon an interim plan to govern facilities improvements, replacements and expenditures until such time as the strategic plan required by this Section 8 is adopted.

## SECTION 9—COMPLIANCE WITH EXTANT REMEDIAL ORDERS

The Parties stipulate that the Defendants have complied with the extant remedial orders to the extent specified by OSMCR in

the proposed findings contained in its reports of July 29, 1991, May 1992 and November 1993.

**SECTION 10—MODIFICATION OF REMEDIAL ORDERS**

10.1. As authorized by the Order of August 14, 1987, as amended, the Parties may from time to time jointly propose vacation or modification of extant remedial orders, as changing circumstances warrant. The State Superintendent of Public Instruction shall continue to report to the Court on tripartite modifications agreed by the Parties.

10.2. All Parties shall meet and confer on or before October 1, 1994 and periodically thereafter to identify those orders which can be vacated or modified as a result of this Agreement. If the Parties agree that certain orders can be vacated or modified, they shall file with the Court as soon as practicable a joint motion describing such orders and seeking their vacation or modification.

**SECTION 11—DEFENDANTS' CONTINUING DUTIES**

In addition to complying with the extant remedial orders which have not yet been fulfilled, Defendants shall also demonstrate by July 1, 1997 their compliance with the following commitments.

11.1. In their operation of the District, Defendants shall refrain from segregation or racial discrimination in any form.

11.2. Schools shall be subject to appropriate intervention as described in Section 11.3 if the scores of their students rank such schools in the bottom quartile of the District's schools on all State proficiency tests, where applicable, or on other annual standardized measures of student achievement, such as the California Achievement Tests. Schools shall also be subject to appropriate intervention if they exhibit substantial disparities by race in student expulsions or suspensions. Appropriate intervention strategies shall be implemented no later than the beginning of the academic year following the determination that a specific school has met the criteria of this Section, unless otherwise agreed by the Parties.

11.3. "Appropriate intervention" by the District shall include, but not be limited to, any or all of the following techniques:

a. Reallocation of academic, financial and other resources;

b. Reduced ratio of pupils to certified classroom teachers;

c. Reassignment of administrators, faculty and/or staff;

d. Redesign of academic program(s); and, as a last resort,

e. Reconstitution of the school, including but not limited to reassignment of administrators, faculty and/or other staff; and/or redesign of academic program(s); and/or reallocation of funds; and/or restaffing only with people willing to commit to the school's program and philosophy and to remain for a period of no less than three years.

11.4. The District will develop and use an enhanced multi-racial/multi-cultural curriculum. The enhanced curriculum will seek to assure that students are presented academic material which is equitable and historically objective in its presentation of the contributions to American life and development by people and groups reflecting the various racial, ethnic and religious backgrounds within the American population. The District's enhanced curriculum will incorporate the use of guest lecturers and speakers, including those drawn from the African–American, Native–American, Asian, and Hispanic communities.

11.5. The District will consult Plaintiffs on the continued siting and projected funding of all existing, or enhanced, or new magnet schools, magnet programs, and community model schools. The Parties shall meet and confer on all such existing schools or programs within 30 days after approval of this Agreement and its entry as a Consent Decree, and annually thereafter as to future enhanced or new magnet schools, magnet programs, and community model schools.

**SECTION 12—REPORTING REQUIREMENTS AND ROLE OF OSMCR**

12.1. The Parties agree to confer on or before September 1, 1994 to determine the needs for a reporting system reflecting the duties set forth in extant remedial orders and

this Agreement. If the Parties and the Director of OSMCR agree that such need exists, they will prepare and submit a relevant proposed reporting mechanism for the Court's approval, no later than October 1, 1994.

12.2. The Parties will continue to support the monitoring function of OSMCR, and agree to work to achieve a cost-effective system of oversight and public reporting until July 1, 1997, when the Court shall determine the scope and nature of any subsequent monitoring.

12.3. The Cleveland and State Defendants will take all reasonable measures to ensure the availability of such information as OSMCR determines it needs to perform its monitoring functions, and shall *equally* provide the monies to finance the operation of OSMCR.

12.4. The Parties agree that implementation of this Agreement warrants continuing suspension of the District's reporting obligations under extant orders, pending further agreement by the Parties or orders of the Court. The Parties further agree and propose to the Court that it vacate so much of the reporting requirements as relate to the Unfinished Compliance Agenda (now Management Systems Review), set forth in the Order of August 14, 1987.

12.5. The Parties agree and propose to the Court that:

a. OSMCR serve as a point of contact for School Community Councils or other members of the public who seek information on implementation of either the provisions of this Agreement or of the Court's remedial orders. OSMCR may forward any such inquiry to any of the Parties, and the Parties agree to respond to any such forwarded inquiry within a reasonable time.

b. OSMCR prepare and conduct an annual orientation for School Community Councils and Parent Communication Centers, with such assistance from the Parties as may be requested by the Director of OSMCR.

c. OSMCR provide to each School Community Council and Parent Communication Center a copy of each report called for in this Agreement or by the remedial orders, along with such other information as may be useful.

## SECTION 13—INTERIM ASSESSMENT OF COMPLIANCE PROGRESS

13.1. At least annually, commencing not later than July 1, 1994 and more frequently if requested by any Party, all Parties shall meet and confer to assess the status of Consent Decree implementation and compliance with relevant remedial orders. Representatives of OSMCR shall participate and shall provide updated reports of its own assessment of compliance.

13.2. From time to time as OSMCR deems advisable, it shall inform all Parties of matters relevant to the Defendants' ongoing performance obligations.

13.3. Plaintiffs shall promptly notify Defendants of any matters which implicate possible issues of non-compliance so that Defendants may have ample opportunity to address and correct matters of concern to Plaintiffs.

13.4. Until July 1, 2000, the District and the State Department of Education will each assign oversight of this Agreement to an individual to be appointed to cabinet rank from each organization, each of whom shall report directly to their respective superintendents. The salaries and necessary support for both positions shall be paid from Fund 12.

13.5. The Superintendent of Public Instruction shall be obligated to monitor progress and where necessary investigate compliance with this Agreement and to order such action as may be required to effect compliance.

13.6. The State Superintendent shall monitor the District's receipt and use of Federal and State funds designated by the District to implement any remedial requirement or provision of this Agreement, including but not limited to Medicaid, Chapter One, special education and vocational education funds.

## SECTION 14—JOINT ANNUAL REPORTS TO THE COURT

Not later than August 31, 1995 and August 31, 1996, the Parties shall submit, in concert with OSMCR, a joint report to the Court concerning the status of Consent Decree implementation and compliance with relevant remedial orders. Each Party may submit its own comments as a supplement to the joint report.

## SECTION 15—COMPLIANCE HEARING

On or after July 1, 1997, the Parties shall move the Court to schedule a public hearing at its earliest convenience to assess compliance with relevant remedial orders and the terms of this Agreement. The Parties shall request, after appropriate evidentiary proceedings, that the Court enter its Order releasing the Defendants from all further obligations, except those which are defined herein for the period from July 1, 1997 to July 1, 2000, if it finds that:

a. The Defendants have implemented all provisions of this Agreement and complied with all extant remedial orders to the extent practicable; and,

b. All vestiges of past discrimination and segregation have been eliminated to the extent practicable; and,

c. The Defendants have otherwise demonstrated good faith commitment to their constitutional obligations.·

## SECTION 16—ENFORCEMENT POWERS OF STATE SUPERINTENDENT

16.1. During the term of this Agreement the State Superintendent of Public Instruction shall be authorized to entertain complaints from Plaintiffs concerning the Defendants' failure to comply with the terms of this Agreement. The State Superintendent of Public Instruction shall have authority to order the District to undertake any appropriate corrective measures.

16.2. The authority of the State Superintendent of Public Instruction to enjoin programs or actions deemed adverse to desegregation requirements or to order actions deemed necessary to fulfill them shall remain intact throughout the life of this Agreement and may include individual schools as well as systemwide activities.

16.3. The District shall have the right of appeal to the Court as to any action ordered by the State Superintendent of Public Instruction. Appeal shall not be taken unless personal consultation between the two superintendents has failed to resolve their differences. Should such consultations predispose the State superintendent to rescind or modify the order, Plaintiffs' counsel will be notified and given an opportunity to be heard before such rescission or modification.

## SECTION 17—CONSTRUCTION; MODIFICATION

17.1. To the extent that any of the terms of this Agreement conflict with provisions of extant remedial orders, the Parties agree and propose to the Court that this Agreement take precedence.

17.2. This Agreement may be modified only by a writing signed by authorized representatives of all Parties and approved by the Court.

## SECTION 18—INTERDISTRICT TRANSFERS

18.1. The Parties reaffirm their belief in the value of desegregative interdistrict student transfers between Cleveland and other school districts within the Greater Cleveland area.

18.2. Not later than July 1, 1994 the Parties shall consult to develop a joint approach to encourage desegregative interdistrict transfers. This approach shall employ every reasonable means, consistent with State law, to encourage and facilitate such transfers between the District and other school districts in the Greater Cleveland area.

## SECTION 19—PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The Parties take notice of Plaintiffs' motion filed February 22, 1994 for a preliminary injunction seeking suspension of State law and regulations which would withhold diplomas from high school seniors who have not passed the ninth grade proficiency test. The Parties agree that the impact of that motion is limited to the postponement of the effec-

tive date of the proficiency test requirements, a matter which is beyond the authority of the State Defendants to grant or waive.

**IN WITNESS WHEREOF,** the Parties have hereunto subscribed their names at Cleveland, Ohio this 15th day of March, 1994.

**THE PLAINTIFF CLASS, BY ITS COUNSEL OF RECORD**

/s/ Thomas I. Atkins

Thomas I. Atkins

/s/ James L. Hardiman

James L. Hardiman

/s/ David W. Whitaker

David W. Whitaker

**THE BOARD OF EDUCATION OF THE CLEVELAND CITY SCHOOL DISTRICT**

By: /s/ Lawrence Lumpkin

Lawrence Lumpkin, President

**THE SUPERINTENDENT OF SCHOOLS**

/s/ Sammie Campbell Parrish

Sammie Campbell Parrish

**APPROVED BY COUNSEL**

/s/ Wanda Rembert Arnold

Wanda Rembert Arnold

General Counsel

Cleveland Board of Education

/s/ Frederick R. Nance

Frederick R. Nance

Dennis G. Terez

Squire, Sanders & Dempsey

/s/ Ricardo B. Teamor

Ricardo B. Teamor

Adrian D. Thompson

Teamor, Agyeman & Thompson

/s/ Maree Sneed

Maree Sneed

Hogan & Hartson

**THE OHIO STATE BOARD OF EDUCATION**

BY: /s/ Oliver Ocasek

Oliver Ocasek, President

**THE SUPERINTENDENT OF PUBLIC INSTRUCTION**

/s/ Ted Sanders

Ted Sanders

**APPROVED BY COUNSEL**

Lee Fisher, Attorney General

By: /s/ Mark O'Neill

Mark O'Neill

Special Counsel for the Ohio State Board of Education and Superintendent of Public Instruction